Gerald Turner, as administrator, filed this wrongful death action against Alabama Power Company ("Alabama Power") after his son, Kenneth Turner, who was a truck driver, was electrocuted when the rear door of his parked truck came in contact with an energized guy wire as he attempted to close the door. A jury found Alabama Power guilty of negligence and awarded Turner $5,000,000. The trial court entered a final judgment in that amount and, following a hearing consistent with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), denied Alabama Power's motions for new trial and for j.n. o.v.
Alabama Power contends that the judgment deprives it of its property in violation of the due process clause of theFourteenth Amendment of the United States Constitution and Article I, §§ 6 and 13, of the Alabama Constitution; deprives it of its rights under the Fourth, Fifth, Sixth, andEighth Amendments of the United States Constitution; and deprives it of equal protection of the laws.
The issue of the constitutionality of awarding punitive damages under the Alabama wrongful death statute has been raised in this Court numerous times in recent years. See, e.g.,Kumar v. Lewis, 561 So.2d 1082 (Ala. 1990); Olympia Spa v.Johnson, 547 So.2d 80 (Ala. 1989); Central Alabama Elec. Co-op.v. Tapley, *Page 553 546 So.2d 371 (Ala. 1989); Alabama Power Co. v. Courtney, 539 So.2d 170
(Ala. 1988); Alabama Power Co. v. Capps, 519 So.2d 1328
(Ala. 1988), appeal dismissed, 486 U.S. 1002, 108 S.Ct. 1723,100 L.Ed.2d 188 (1989); Alabama Power Co. v. Cantrell,507 So.2d 1295 (Ala. 1986); Merrell v. Alabama Power Co.,382 So.2d 494 (Ala. 1980). However, in several of those cases the constitutional issue was not properly presented for review. For example, in Alabama Power Co. v. Capps, supra, we recognized the following fundamental principle of appellate procedure:
 "An appellant cannot invoke action by a court and have a case tried on certain issues and then later, when dissatisfied with the result, raise an entirely new issue, such as the constitutionality of the statutes under which he was proceeding, on motion for a new trial."
519 So.2d at 1330; see also, Alabama Power Co. v. Courtney,supra. In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to and reviewed by the trial court.HealthAmerica v. Menton, 551 So.2d 235 (Ala. 1989); Marion v.Hall, 429 So.2d 937 (Ala. 1983); Stephens v. Central of GeorgiaR.R., 367 So.2d 192 (Ala. 1979). Additionally, in order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated. Central Alabama Elec.Co-Op. v. Tapley, supra.
 I. Fourth, Fifth and Sixth Amendments
Alabama Power's argument that the judgment violates its rights under the Fourth, Fifth, and Sixth Amendments does not identify any specific right it believes has been violated. Alabama Power has also failed to make any specific arguments regarding its constitutional challenges under any of these amendments. As a result, this Court will not address those arguments. Ala.R.App.P. 28(a)(5); Hickox v. Stover,551 So.2d 259 (Ala. 1989); Tapley, supra. However, Alabama Power's argument based on due process under the Fourteenth Amendment
and its Eighth Amendment argument have been properly presented and will be addressed.
 II. Eighth Amendment
Alabama Power contends that punitive damages awards under Alabama's wrongful death statute constitute "excessive fines" and therefore violate the Eighth Amendment. This Court has specifically and repeatedly rejected this argument. Kumar v.Lewis, 561 So.2d 1082 (Ala. 1990); Central Alabama Elec. Co-op.v. Tapley, supra; Industrial Chem. Fiberglass Corp. v.Chandler, 547 So.2d 812 (Ala. 1988). Additionally, the United States Supreme Court has held that the excessive fines clause of the Eighth Amendment does not apply to punitive damages awards in cases between private parties. Browning-FerrisIndustries of Vermont, Inc. v. Kelco Disposal, Inc.,492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). See also Ingrahamv. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (establishing the constitutional boundaries of theEighth Amendment). We continue to adhere to our view that punitive damages awards under our wrongful death statutes do not violate the Eighth Amendment.
 III. Due Process
Alabama Power argues that Alabama's wrongful death statute denies it its due process rights under the Fourteenth Amendment
and Article I, §§ 6 and 13, of the Alabama Constitution because the statute allows only punitive damages, and not compensatory damages, upon a finding of negligence by a preponderance of the evidence, and, further, allows a jury to assess the amount of damages at its discretion. We recently reviewed and rejected this argument in Central Alabama Elec. Co-op. v. Tapley, supra.
Because these issues are argued generally and collectively in the briefs and because they mirror in many instances the same arguments presented in Tapley, supra, we quote rather extensively from that opinion:
 "Does the due process clause of the Fourteenth Amendment require that juries *Page 554 
be guided by objective criteria in order to properly assess punitive damages? Stated perhaps more accurately, is it fundamentally unfair for a jury to award punitive damages without the guidance of objective criteria?
 "We recognize, indeed, we are faced almost daily with, the comments of various jurists, philosophers, scholars, and members of the national bar assailing the practicality in civil cases of the jury system and lamenting its continued existence. The three bases of criticism most often voiced are the helplessness and lack of sophistication of jurors obligated to resolve issues in complex litigation; the tendency of modern juries to over-compensate injured tort victims for noneconomic damages; and the 'unbridled' discretion jurors enjoy in imposing massive punitive damages awards. On the larger scale, those complaints, and the very issue under review here, are really attacks on the civil justice system as a whole.
 "Just because 'juries have always done it that way' is no adequate response. But we must pause to recall that, until very recently, attacks on jury verdicts have not been rooted in the federal constitution. History instructs us that, in the typical case involving noneconomic damages and punitive damages, once the jury has been instructed on and determines liability, the amount of compensation to be awarded and the extent of punishment to be meted out are subjects unquestionably within the sacred domain of the jury's discretion. A large jury verdict was subject to judicial revision only if the form of the verdict was incorrectably flawed or if the verdict was undeniably the product of some improper motive, such as bias or prejudice, or bent with an improper emotion, such as passion.
 "Tossed into the lessons of the past is the fact that the only damages available in a wrongful death action brought pursuant to Alabama law are punitive damages. The sanctity of human life, the noble goal of preserving human life, and society's desire to punish those whose conduct results in the loss of human life, have all been accepted by our Legislature as criteria outweighing the seeming anomaly of permitting punitive damages for simple negligence. This view rests on the premise that one may be adequately compensated for his injuries, but the value of human life has no measure. Punishing the tort-feasor dissuades others from engaging in life-endangering conduct.
 "To paraphrase a famous (or infamous) quotation, the American system of civil justice is the worst in the world — except for all of the rest. As the 'problems' with the jury system have been pointed out with increasing frequency, so has the justice system responded.
 "If a defendant is dissatisfied with a jury's verdict, and feels that it is excessive, or otherwise flawed, he is entitled to the protection of a variety of safeguards. The defendant may move for remittitur and a new trial in the trial court, and may appeal as a matter of right from the denial of either. He is entitled to a de novo
review of the jury's verdict on appeal. The appellate courts in this state have the authority to order a new trial due to the excessiveness of the verdict, to conditionally order a new trial unless the plaintiff accepts a remittitur, and to order the trial court to conditionally order a new trial unless the plaintiff accepts a remittitur.
 "If a defendant properly moves the trial court to do so, the trial court is obligated to state on the record its reasons for either interfering with the jury's verdict or not interfering with it. And, in making the determination of whether the verdict is excessive (or inadequate), a trial court is authorized to consider the following non-exclusive list of factors:
 " '(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If *Page 555 
grievous, the damages should be much greater.'
 " '(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.'
 " '(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.'
 " '(4) The financial position of the defendant would be relevant.'
 " '(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.'
 " '(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.'
 " '(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.'
 "Green Oil Co. v. Hornsby, 539 So.2d 218, 223-24
(Ala. 1989) (quoting Aetna Life Ins. Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala. 1987) (Houston, J., concurring)).
 "Punitive damages should not exceed an amount necessary to accomplish society's goals of punishment and deterrence. But the degree of punishment necessary to achieve those goals changes with each case. In the rarest cases, involving the most egregious conduct, juries should be entitled to punish defendants so severely as to destroy them; justice demands that. But in the typical punitive damages case, the award should punish without destroying. That, in a nutshell, is the way punitive damages and the civil justice system coexist.
 "The identical case tried to different juries will likely produce different results, but that does not necessarily smack of a lack of fundamental fairness. That is inherent in the nature of juries, given the imperfection of man and his system of justice. Some discretion must be afforded to juries to assess punitive damages as they see fit. We can envision no set of carved-in-granite standards that would guide every jury in every conceivable case. Discretion tolerates elasticity, but the jury's discretion is by no means unbridled. The 'whims' of any given jury are still harnessed by the authority of the trial court and appellate courts.
 "Due to the safeguards now in place in Alabama, we find no merit to [the defendant's] allegation that its rights to substantive due process have been denied, or based on the issues preserved for our review, that our wrongful death statute is unconstitutional. We have confidence in our system of civil justice and faith that that system will accommodate change as it is required.
 "We close our discussion with the wisdom of Mr. Justice Cardozo:
 " 'The eccentricities of judges balance one another. One judge looks at problems from the point of view of history, another from that of philosophy, another from that of social utility, one is a formalist, another a latitudinarian, one is timorous of change, another dissatisfied with the present; out of the attrition of diverse minds there is beaten something which has a constancy and uniformity and average value of greater than its component elements. The same thing is true of the work of juries. I do not mean to suggest that the product in either case does not betray the flaws inherent in its origin. The flaws are there as in every human institution. Because they are not only there but visible, we have faith that they will be corrected. There is no assurance that the rule of the majority will be the expression of *Page 556 
perfect reason when embodied in constitution or in statute. We ought not expect more of it when embodied in the judgments of the courts. The tide rises and falls, but the sands of error crumble.' [Quoting Cardozo, The Nature of the Judicial Process 143 (1921).]"
546 So.2d at 376-78 (footnotes omitted).
 IV. Equal Protection
Additionally, Alabama Power contends that the exception of wrongful death actions from Ala. Code 1975, §§ 6-5-410 and -411, violates its equal protection rights under theFourteenth Amendment. These statutes restrict punitive damages in tort actions other than for wrongful death to acts of oppression, fraud, wantonness, or malice, proved by clear and convincing evidence, and they place a ceiling of $250,000 on such awards. Alabama Power argues that this attempted classification is not a rational method of furthering a legitimate State purpose and, further, that the distinction between punitive damages awards in wrongful death actions and such awards in all other tort actions bears no relation to the statutory purpose.
The equal protection guarantee requires that a legislative classification is properly drawn. Our review of this issue is limited to whether it is conceivable that the classification bears a rational relationship to an end of government that is not prohibited by the Constitution of the United States. Nowak, Rotunda, and Young, Constitutional Law § 14.3, at 580 (3d ed. 1986).
The exception of wrongful death actions from legislation restricting punitive damages is warranted, because wrongful death actions differ critically from the actions to which the restrictions apply. In Alabama, only punitive damages are available in wrongful death actions, and these damages may be awarded against a defendant based on its negligent conduct. The United States Supreme Court approved Alabama's policy of awarding punitive damages in wrongful death actions inLouis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112,47 S.Ct. 509, 71 L.Ed. 952 (1927). The Court recognized that "the purpose of Alabama's wrongful death act [Homicide Act of Alabama, § 5696, Code of 1923] is to strike at the evil of the negligent destruction of human life" and concluded: "We cannot say that it is beyond the power of a legislature, in effecting such a change in common law rules, to attempt to preserve human life by making homicide expensive." 274 U.S. at 116,47 S.Ct. at 510.
The protection of the lives of its citizens is certainly a legitimate state interest. By allowing punitive damages to be assessed against defendants in wrongful death actions in a manner different from the way punitive damages are assessed in other civil actions, the legislature has undoubtably recognized that no arbitrary cap can be placed on the value of human life and is "attempt[ing] to preserve human life by making homicide expensive." 274 U.S. at 116, 47 S.Ct. at 510. The exception of wrongful death actions from legislation imposing caps on the amount of punitive damages that can be awarded in civil actions bears a rational relationship to a legitimate state interest that is not prohibited by the Constitution. Therefore, that exception does not violate the guarantee of equal protection.
 V. Jury Testimony
Alabama Power asserts that, if this Court denies its request for a new trial on the above grounds, then this case should be remanded to allow it the opportunity to develop evidence regarding alleged extraneous facts considered by the jury during its deliberations. Specifically, Alabama Power contends that it was wrongfully denied the opportunity to question a juror during post-trial proceedings regarding either comments she allegedly made about Alabama Power's liability insurance or any individual ill will on her part toward Alabama Power. Alabama Power also contends that the trial court erred in striking the affidavit of a fellow juror that set forth the substance of those alleged comments.
As a general rule, neither testimony nor affidavits are admissible to impeach a jury's verdict. Fabianke v. Weaver, *Page 557 527 So.2d 1253 (Ala. 1988); Wiberg v. Sadoughian, 514 So.2d 940
(Ala. 1987). An exception to this rule exists when an affidavit tends to show extraneous facts that have influenced the jury's deliberations and the resulting verdict. Fabianke, supra.
Affidavits, such as the one at issue here, concerning "the debates and discussions of the case by the jury while deliberating thereon" do not fall within the exception to the rule. Rather, statements that have been held admissible under this exception usually are made to the jury by someone not on the jury. Weekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955), cited in Fabianke, supra. Thus, the trial judge did not err in striking the affidavit of one juror and in refusing to allow another juror to be questioned during post-trial proceedings.
 VI. Excessiveness of the verdict
Alabama Power contends that the $5,000,000 award in this case is so excessive that a new trial is warranted or a remittitur is mandatory. Alabama Power further contends that the jury verdict is not supported by the facts and that there is evidence to support its proposition that the award was based on bias, passion, prejudice, or other improper motive.
The record reflects that, consistent with Hammond v. City ofGadsden, 493 So.2d 1374 (Ala. 1986), the trial court held a hearing and stated, on the record, its reasons for denying Alabama Power's motion for a new trial based upon the alleged excessiveness of the jury's verdict. The following excerpt from that order reveals that the trial judge reviewed the evidence in a manner consistent with the factors outlined in Green OilCo. v. Hornsby, 539 So.2d 218 (Ala. 1989):
 "Defendant also contends that the jury's verdict of five million dollars was excessive and that this Court should conditionally grant a new trial upon the Plaintiff's failure to accept a remittitur. This Court will examine that aspect of the motion and the jury's verdict in light of the decision in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). In that regard, the Court has held a hearing and considered additional evidence submitted by the parties as well as the evidence which was submitted to the jury during the trial of this case. The Court will discuss that evidence in light of the factors outlined in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).
 "Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the Defendant's conduct. In this case, the Plaintiff's son was killed. There is no greater harm which can occur. The purpose of the Alabama Wrongful Death Act under which this claim was brought is to preserve human life. Consideration of this factor weighs heavily in favor of the conclusion that the jury's verdict was not excessive.
 "The Defendant's conduct should be considered. In this case it was undisputed that immediately prior to the Plaintiff's son striking the guy wire with his truck door the clearance between that guy wire and the closest energerized wire was substantially less than that required by Alabama Power Company's own standards and every other recognized standard for electrical transmission wires. Defendant admitted that this condition was extremely dangerous and likely to cause death.
 "The evidence was in dispute as to what caused the dangerous condition to occur. If the Plaintiff's evidence is believed the dangerous condition existed for some fifteen months prior to the incident. During that time Alabama Power Company performed repairs and service in a number of locations near this pole. In addition, each month an Alabama Power Company employee walked this area to read meters.
 "The Alabama Power Company engineer who designed these lines and equipment admitted that he 'eye-balled' the location rather than performing computations to determine whether there were adequate clearances. The construction work was inspected by several employees, including this engineer, after the work was completed but this dangerous *Page 558 
condition was not noticed or if noticed was not corrected.
 "This was a lengthy case and there is a great deal of additional evidence concerning the Defendant's conduct which will not be discussed here. This Court is firmly of the opinion that the evidence of Defendant's conduct in this case certainly does not weigh in favor of reducing this verdict.
 "Any profit of the Defendant as [a] result of the wrongful conduct should be considered. The Defendant indicated in answer to post-judgment interrogatories that it does not know what it would cost to institute a periodic inspection program of its wires and equipment which could have identified this dangerous condition prior to the incident. There was testimony that the Defendant has more than one million poles across the State and more than three hundred thousand guy wires. Clearly, such an inspection program would involve substantial expenditures. By not having such a program this Defendant has certainly profited although this Court is not in a position to quantify that profit.
 "The financial position of the Defendant is relevant. Alabama Power Company has admitted that this verdict will have no adverse impact on it. Certainly, in that circumstance its financial condition cannot be used as a factor to reduce the verdict. It seems unlikely that the purpose of deterrence would be fulfilled if this verdict were reduced since even this verdict is insignificant to the profits and assets of this Defendant.
 "The other factors discussed in Green Oil do not appear to this Court to have any application in this case. Defendant Alabama Power Company does not argue that those factors justify reduction of the verdict.
 "Defendant does not argue that this jury verdict resulted from bias, passion, prejudice, corruption or other improper motive on behalf of the jury except to say that its size alone indicates that. This Court has considered the jury and its function in this case and specifically finds that this verdict was not the result of any bias, passion, prejudice, corruption or other improper motive. Considering the evidence presented, this verdict is not so large as to shock the judicial conscience of this Court.
"FINDINGS OF FACT
 "1. The verdict in this case was not the result of bias, passion, prejudice, corruption or other improper motion.
 "2. The amount of the verdict in this case was justified by the evidence presented.
 "3. The amount of the verdict in this case does not exceed an amount that will accomplish society's goal of punishment and deterrence.
 "4. The evidence in this case indicates conduct by the Defendant which justifies imposition of punitive damages in the amount of this jury verdict."
However, as we recognized in Burlington Northern R.R. v.Whitt, 575 So.2d 1011, at 1024 (Ala. 1990), the trial court's compliance with the Hammond guidelines does not relieve us of our responsibility to consider whether the award is excessive. Our review of the record in this case, together with our consideration of the damages awards in other wrongful death actions, leads us to the conclusion that the award of $5,000,000 in this case is excessive and should be reduced by $1,500,000. Therefore, we affirm the trial court's judgment, conditioned on the acceptance of a remittitur of $1,500,000 by the plaintiff, within 28 days of the date of this opinion, which will result in a judgment in his favor in the amount of $3,500,000.
Accordingly, the judgment is affirmed, conditioned upon the plaintiff's acceptance of the remittitur of $1,500,000 as ordered by this Court.
AFFIRMED CONDITIONALLY. *Page 559 
MADDOX,* JONES, SHORES and STEAGALL, JJ., concur.
HOUSTON, J., dissents.
* Although Justice Maddox did not sit at oral argument, he has studied the record and listened to the tapes of oral argument.