HOUSTON, Justice.
Gladys Roberson sued Gulf Life Insurance Company (“Gulf Life”), American General Life and Accident Insurance Company (“American General”), and David McLeod, seeking damages for, among other things, intentional and reckless misrepresentation and suppression.[1] Roberson also sought to recover damages based on allegations of “wanton” misrepresentation. The trial court entered a summary judgment for the defendants on the “wanton” misrepresentation claim and submitted the other claims to the jury. The jury returned a verdict in favor of the defendants, and the trial court entered a judgment on that verdict. Roberson appealed. We reverse and remand.
Three issues are presented for our review:
*955 (1) Whether the trial court committed reversible error in charging the jury on Roberson’s burden of proof;
(2) Whether the trial court committed reversible error in failing to adequately charge the jury on the elements of Roberson’s claim alleging reckless misrepresentation; and,
(3) Whether the summary judgment on Roberson’s “wanton” misrepresentation claim was improper.
Due to the nature of the issues presented and the approach we have taken in resolving these issues, a detailed statement of the facts is not necessary. It is sufficient to note that in 1984 Roberson’s daughter, Carla, disappeared under circumstances strongly suggesting, but not proving, that she had drowned. Carla’s body was never found, and the evidence was inconclusive as to the cause of her death. Gulf Life, a subsidiary of American General Corporation, through its district manager, McLeod, informed Roberson in 1984 that she would have to continue to pay the premiums for seven years on six policies of insurance on her daughter’s life in order to collect the benefits under those policies. Five of the policies were “whole life” insurance policies with double indemnity provisions, and one provided for accidental death benefits only. When McLeod represented to Roberson that she would have to wait seven years to file claims under the policies, Ala. Code 1975, § 43-8-6, provided (as it does now), as follows:
“A person who is absent for a continuous period of five years, during which he has not been heard from, and whose absence is not satisfactorily explained after diligent search or inquiry is presumed to be dead. His death is presumed to have occurred at the end of the period unless there is sufficient evidence for determining that death occurred earlier.”
Roberson paid the premiums for seven years, as instructed. At the end of the seven-year period, Gulf Life paid Roberson all of the benefits that were due under the policies except accidental death benefits. American General, another subsidiary of American General Corporation whose claims department handles claims made under Gulf Life policies, initially represented to Roberson that an insured was presumed dead under Alabama law after seven years’ absence, but later informed Roberson that Gulf Life had made a mistake in requiring her to pay the premiums on the policies for seven years instead of five, and Gulf Life refunded to her the excess premiums that she had paid, plus interest. However, American General refused to consider payment of any accidental death benefits until Roberson obtained a judicial declaration that her daughter’s death was, in fact, accidental. Roberson based her misrepresentation claims on allegations that Gulf Life, through McLeod, and later American General, had misrepresented to her that she had to continue to pay premiums on the policies for seven years, instead of five, before she could file a claim; she based her suppression claim on allegations that Gulf Life and American General had failed to inform her that she possibly could have obtained a judicial declaration of death at any time following her daughter’s disappearance and that she would be required to seek a judicial declaration of accidental death before she could receive accidental death benefits under the policies; and she based her “wantonness” claim on allegations that Gulf Life and American General had acted wantonly in misrepresenting to her that she would be able to collect all of the benefits under her six policies if she paid the premiums on those policies for seven years after her daughter’s disappearance.
With respect to the first issue, Roberson contends that the trial court erroneously charged the jury that before she could recover damages for fraud she had to prove that her daughter’s death had been accidental. The defendants contend that Roberson is reading the trial court’s charge out of context. They argue that when the charge is read in context, and considered with certain evidence that Roberson introduced at the trial, it becomes clear that the jury could not have been misled as to Roberson’s burden of proof with respect to her fraud claims.
Our review of the record indicates that Roberson, over objection, was allowed to introduce evidence pertaining to American General’s handling of an unrelated claim, supposedly for the purpose of establishing a *956 pattern or practice of fraudulent conduct on American General’s part. The evidence shows that with respect to that claim, which was made on the death of Mallory Tucker, American General initially raised the suicide exclusion in the policy as a basis for refusing to pay the claim, but eventually paid the claim after it had been shown additional evidence suggesting that Tucker’s death was not the result of a suicide. In an apparent attempt to convey to the jury that American General had the burden of proof as to the applicability of the suicide exclusion regarding the Mallory Tucker claim but that Roberson had the burden of proving to American General, before she could collect under the policies, that her daughter’s death was accidental, the defendants requested, and received, the following jury instruction:
“I charge you that with respect to the evidence which has been introduced in this case concerning the claim for the death of Mallory Tucker, the law would have placed the burden of proof on American General to prove Mr. Tucker voluntarily and intentionally took his own life if American General had chosen to contest the claim on the basis of a suicide exclusion in the policy.
“I would further charge you that in this case, Gladys Roberson had the burden to prove her daughter died an accidental death within the coverage provisions of the policy in order to receive accidental death benefits.”
The jury was otherwise instructed that Roberson could recover under her fraud claims if she proved to the jury’s reasonable satisfaction each of the elements of those claims.
It is well settled that a party is entitled to proper jury instructions with respect to the issues presented. Alabama Farm Bureau Mutual Insurance Service, Inc. v. Jericho Plantation, Inc., 481 So.2d 343 (Ala.1985). However, after carefully examining the trial court’s oral charge in its entirety, as we are required to do, Wright v. Rowland, 406 So.2d 830 (Ala.1981), we are satisfied that the jury was properly instructed on Roberson’s burden of proof with respect to her allegations of fraud and that that portion of the charge quoted above could not have misled the jury into believing that Roberson’s recovery under her fraud claims was contingent on her first establishing that her daughter’s death was accidental.
As to the second issue, Roberson contends that the trial court committed reversible error in charging the jury as follows:
“Willful misrepresentation. If you’re reasonably satisfied from the evidence that the defendant ivillfully misrepresented a material fact to the plaintiff with the intent to induce the plaintiff to act thereon, and the plaintiff did, without knowledge of its falsity, act upon said willful misrepresentation to [her] injury, then the defendant would be guilty of legal fraud. The following elements — the elements of an action of willful fraud are as follows: One, there must be [a] false representation; the representation must concern a material existing fact; the representation must be made with knowledge or belief on the part of the defendant that the representation was false; or be made by the defendant recklessly ivithout regard to its truth or falsity. The representation must be made by the defendant with the intent to induce the plaintiff to act. The plaintiff must act in reasonable reliance upon [the] representation and the plaintiff must be damaged as a proximate result of the misrepresentation. If you are not reasonably satisfied from the evidence that the plaintiff has proved each of these elements then the plaintiff cannot recover for willful fraud.”
(Emphasis added.) Roberson argues that this portion of the charge was misleading in that, according to Roberson, it strongly suggested to the jury that the only misrepresentation claim that was before it was one alleging intentional misrepresentation. The defendants contend that the trial court’s charge, when considered in its entirety, was sufficiently clear to apprise the jury that Roberson was claiming damages for both intentional misrepresentation and reckless misrepresentation. They point to other portions of the charge in which the trial court instructed the jury as follows:
“ ‘Recklessness,’ as I have used that [term] in this charge here today, means conduct which is carried on with a reckless or *957 conscious disregard of the rights or safety of others.
[[Image here]]
“Now we’ve talked about, so far, willful, reckless fraud, those allegations; we’ve talked about the type of damages claimed in this case, compensatory and punitive.
[[Image here]]
“Okay. This case comes to you by way of a complaint. The complaint has alleged fraud. I’ve talked to you about the elements of that fraud, both willful fraud, reckless fraud, fraud by suppression.”
After reviewing the pertinent portions of the trial court’s charge, we conclude that the trial court did erroneously refer to the state-of-mind element of a cause of action for reckless misrepresentation in such a manner as to suggest that it was an element of a cause of action for intentional misrepresentation. We cannot agree with the defendants’ contention that the trial court’s passing references to “willful, reckless fraud,” or “willful fraud, reckless fraud,” were sufficient to correct the false impression, created in the detailed instruction on the elements of intentional fraud, that recklessness is an element of intentional fraud. It appears beyond doubt that the charge, taken as a whole, conveyed to the jury an understanding that Roberson could recover only for intentional fraud. This misleading charge worked substantial prejudice to Roberson, because there was little evidence of intentional fraud. Roberson requested the following charge:
“If you are reasonably satisfied from the evidence that the defendants misrepresented a material fact recklessly without knowledge of the truth or falsity thereof and with the intent to induce Mrs. Roberson to act and that she acted upon said reckless misrepresentation to her injury, then defendants are guilty of legal fraud.”
The trial court refused to give this requested charge. We agree with Roberson that her requested charge on reckless misrepresentation was a clear statement of the law. Because the trial court’s oral charge did not adequately apprise the jury of the elements of Roberson’s reckless misrepresentation claim, the trial court’s refusal of her requested charge on reckless misrepresentation constituted reversible error. Rule 51, Ala.R.Civ. P.; Williams v. Allstate Ins. Co., 591 So.2d 38 (Ala.1991); Alabama Farm Bureau Mutual Insurance Service, Inc. v. Jericho Plantation, Inc., supra.[2]
With regard to the third issue, Roberson contends that she was entitled to have the jury consider her “wanton” misrepresentation claim. Although the defendants contend that that claim was barred by the applicable statute of limitations governing wantonness claims generally and, thus, that the summary judgment on that claim was proper for that reason, we find it unnecessary to address that contention. Instead, we agree with the alternative argument made by Gulf Life and American General that Roberson’s “wanton” misrepresentation claim was nothing more than a restatement of her claim alleging reckless misrepresentation. Roberson set out her “wantonness” claim in Count 25 of her complaint. That count, in its entirety, reads as follows:
“Plaintiff hereby repeats, realleges, and incorporates by reference paragraphs 1 through 103 of the complaint, as amended, as if more fully set out herein.
“Defendants required plaintiff to pay premiums on a disappearance claim for seven (7) years when defendants knew or should have known that the presumption of death period in Alabama had been changed to five (5) years.
“At the end of the seven (7) year period, defendants, by way of investigating the disappearance of Carla Roberson, made one call to the Escambia County Sheriffs Department and reviewed the Escambia County Sheriffs Department report submitted to defendants by plaintiffs son. The Escambia County Sheriffs Department concluded in June of 1984 that there had been no indication of foul play and that ‘it may be indicated that the individual *958 [Carla Roberson] had entered the water at Pensacola Beach and being unfamiliar with the circumstances of the water, could possibly have drowned and the body lost.’
“This was the information known to defendants at the time Mrs. Roberson was told by defendants that if she paid her premiums for seven (7) years that at the end of seven (7) years the benefits would be paid.
“Mrs. Roberson continued to pay premiums for seven (7) years on five life insurance policies with a double indemnity provision for accidental death and one accident/accidental death policy.
“At the end of seven (7) years, there was no additional information regarding the disappearance of Carla Roberson. The facts of the disappearance had not changed since the time that Mrs. Roberson was told to continue paying her premiums on these policies.
“At the end of seven (7) years, Mrs. Roberson, through the assistance of her son, Mr. Larry Roberson, completed all forms and paperwork required by defendants to process this claim.
“Defendants were further told by Mr. Roberson that his mother did not have the money to hire a lawyer to go to court and that the natural death and accidental death benefits should be paid.
“Defendant American General later agreed to pay the natural death benefits on four whole life policies, now without requiring a certificate of death, but refused to pay the double indemnity accidental death benefits on said four policies and refused to pay the benefits under the accident/acei-dental death policy. Defendant American General concluded, in an August 8, 1991, memo from Supervisor Rod O’Mara that no accidental death benefits were due.
“Defendants informed plaintiff that although the seven (7) years presumption of death period had run and American General had already paid the natural death benefits, that the insured, Carla Roberson, ‘would have to be legally declared deceased and then you would have to present your evidence to the court and they would rule as to whether the death was by accidental means.’ Defendant American General went further to say that should Mrs. Roberson pursue the declaration of death through the court and the court rule the death accidental, that American General would be glad to consider the accidental death benefits. American General, with knowledge that Mrs. Roberson could not afford counsel, was informing her that if she incurs the extensive costs and expense of pursuing this matter further, that American General would consider accidental death benefits, not that they would pay said benefits.
“Plaintiff had presented defendant American General with all proof available to her regarding the disappearance of Carla Roberson. There had been no additional developments regarding the disappearance of Carla Roberson that were not known in June of 1984. There is no additional proof which could have been presented to a court of law that was not already available to American General. There are no provisions in plaintiffs insurance policy which require her to obtain a court declaration of accidental death nor are there procedures mandated by defendant American General that a court declaration of accidental death be obtained. Defendant American General could have made the decision to pay the accidental death benefits instead of [concluding] that the accidental death benefits were not due to be paid. This decision by defendant American General was made with the knowledge that Gladys Roberson could not afford an attorney to pursue those costly steps imposed upon her by defendant American General before she could obtain the benefits [for] which she had been paying premiums for seven (7) years.
“On or about August 13, 1991, defendants again represented to plaintiff that the statutory period was seven (7) years, when in fact the law had been changed to a five (5) year presumption of death period prior to the disappearance of Carla Roberson.
“On or about August 13, 1991, defendants represented to plaintiff that no premium refunds were due even though the *959 presumption of death period was five (5) years and even though Mrs. Roberson had paid premiums beyond the ending of the seven (7) year presumption of death period.
“Thereafter, defendants, through their local office, issued apparent premium refund checks on only four policies. Approximately two and a half months after the lawsuit was filed in this case, defendants issued premium refunds on all policies from the date of the ending of the five (5) year presumption of death period to the date of the letter enclosing the premium refund checks. On or about October 14, 1991, Mrs. Roberson, through the assistance of counsel, wrote defendants stating in part ... ‘also I believe I have another policy or so that may insure Carla, and would thank you for looking into that to see if I am entitled to any other proceeds.’ Whereupon, defendant in its letter of November 6, 1991, informed Mrs. Roberson that American General had checked for additional policies on Carla and had been unable to locate any other numbers. Although defendants stated they would check further if Mrs. Roberson had some documentation showing additional policy numbers, defendants located, after the lawsuit was filed and without receiving further documentation from Mrs. Roberson, an additional policy insuring the life of Carla Roberson and paid the whole life benefits, refunded premiums, and tendered interest.
“As a direct and proximate result of defendants’ wantonness, plaintiff has suffered injuries and damages.
“WHEREFORE, plaintiff hereby demands judgment against the defendants for an amount that the jury deems just, fit and proper under the circumstances of this case ... including compensatory and punitive damages and costs.”
(Emphasis in original.)
Roberson voluntarily dismissed her claims alleging breach of contract and bad faith refusal to pay an insurance claim. Roberson stated both in her initial brief on appeal and in her reply brief that Count 25 did not involve a claim of wantonness in connection with American General’s handling of her claims. Roberson’s “wantonness” claim, as we understand it, is based on allegations that Gulf Life and American General acted recklessly (i.e., in conscious disregard of the circumstances and with knowledge that Roberson would likely or probably be damaged) in misrepresenting to her that she would be able to collect all of the benefits under her six policies if she paid the premiums on those policies for seven years. It appears to us that Roberson has made these same allegations in her claim of reckless misrepresentation. We can discern no material difference between Roberson’s claim in Count 25 alleging “wanton” misrepresentation and her claim alleging reckless misrepresentation. We conclude, therefore, that the defendants were not entitled to a summary judgment on Roberson’s claim alleging “wanton” misrepresentation.
For the foregoing reasons, the judgment is reversed — both that portion based on the jury’s verdict and the earlier summary judgment — and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, INGRAM and COOK, JJ., concur.

. Roberson voluntarily dismissed her claims alleging breach of contract and bad faith refusal to pay an insurance claim.

. We note that the juror affidavits submitted to the trial court in support of Roberson’s motion for a new trial cannot be considered for the purpose of impcaching the verdict. Alabama Power Co. v. Turner, 575 So.2d 551 (Ala.1991), cert, denied, 500 U.S. 953 (1991); Alabama Power Co. v. Brooks, 479 So.2d 1169 (Ala. 1985).