United States Court of Appeals,

Eleventh Circuit.

No. 97-6179

Non-Argument Calendar.

OLD REPUBLIC UNION INSURANCE COMPANY, Plaintiff-Appellant,

v.

TILLIS TRUCKING CO., INC.; Tillis Land & Timber Co.; Willie Ray Pride; Malachi Moses, Defendants-Appellees.

Oct. 14, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-96-T-1462-S), Myron H. Thompson, Judge.

Before TJOFLAT, COX and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This case arises from the efforts of Old Republic Union Insurance Company ("Old Republic") to avoid payment of a state court judgment against its insured and, alternatively, to have its obligations under certain insurance policies determined by a federal court instead of state court. Old Republic sought to do that by instituting a declaratory judgment action in federal district court. Relying on principles of federalism and comity, including those embodied in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the district court dismissed the lawsuit without prejudice, in favor of pending state court proceedings. We affirm.

## I. BACKGROUND

On December 14, 1994, a tragic accident occurred between a Tillis Trucking Company tractor-trailer driven by Willie Ray Pride and an automobile driven by Cynthia Moses, who died as a result of the accident. Together with the co-administrators of the estate, Mrs. Moses' husband, Malachi Moses, brought a wrongful death action in Dale County, Alabama, against Pride, Tillis Trucking Company, and its related company, Tillis Land & Timber (collectively, the "Tillis Companies").

Old Republic insures the Tillis Companies under both a commercial automobile liability policy and a general liability policy. Accordingly, Old Republic provided a defense to all the defendants in the wrongful death action, while maintaining that it was potentially responsible for a judgment only up to the $1,000,000 policy limit of the commercial automobile policy. Moses and independent counsel for the Tillis Companies contended that Old Republic would also be liable under the terms of the general liability policy for any judgment in excess of that policy limit.

At trial, Old Republic moved to intervene in order to submit interrogatories to the jury for the purpose of establishing whether liability was based on any theory that would implicate the general liability policy in addition to the commercial automobile policy. Initially, the state court granted Old Republic's motion for intervention, but it later reversed that ruling. Accordingly, Old Republic's proposed interrogatories were not submitted to the jury. On September 17, 1996, the jury returned a verdict against Pride and Tillis Trucking, awarding Moses $7,000,000 in punitive damages.[1]

Three days later, on September 20, 1996, Old Republic filed a declaratory judgment action in federal district court, seeking the following declarations: (1) the Alabama Wrongful Death Statute, Ala.Code § 6-5-410, is unconstitutional; (2) the Alabama Wrongful Death Statute, if constitutional, cannot be constitutionally enforced against Old Republic or any other insurer; (3) Old Republic's liability to the defendants cannot exceed the $1,000,000 policy limit of its commercial automobile insurance policy with the insured.

On October 18, 1996, Moses and the co-administrators filed a second state lawsuit against Old Republic, Tillis Trucking, and Pride. That lawsuit requested the state court to: (1) enter an order requiring Old Republic to pay the limit of the commercial automobile policy to the plaintiffs, and (2) conduct a jury trial to determine the existence and application of coverage under the general liability policy. Tillis Trucking answered and filed a cross-claim against Old Republic, seeking

---

[1]As authoritatively construed by the Alabama Supreme Court, the Alabama Wrongful Death Statute provides only for the award of punitive damages. *See, e.g., Tatum v. Schering Corp.,* 523 So.2d 1042 (Ala.1988).

compensatory and punitive damages for Old Republic's failure to settle the prior wrongful death action.

On February 5, 1997, the district court dismissed Old Republic's declaratory judgment action without prejudice in favor of the pending second state action. Relying on principles of federalism and comity, including those embodied in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the district held that exercise of jurisdiction over the declaratory judgment action would be "contrary to the established doctrines which discourage such interference with state courts." District Court Op. at 12-13. This appeal followed.

## II. STANDARD OF REVIEW

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 284, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment...." *Id.* at 286, 115 S.Ct. at 2143. Accordingly, the Supreme Court has directed that "district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion," *id.* at 288, 115 S.Ct. at 2144, and we apply that standard here.

## III. ANALYSIS

The district court declined to exercise jurisdiction over Old Republic's declaratory judgment action, relying on "considerations of practicality and wise judicial administration." District Court Op. at 9 (quoting *Wilton,* 515 U.S. at 286, 115 S.Ct. at 2143). Among those considerations were the abstention principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), particularly as illuminated by the Supreme Court's subsequent decision in *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

3

As we shall explain, those principles alone are sufficient to prevent the district court's decision from being an abuse of discretion.[2]

As the district court implicitly recognized, a declaration that the Alabama Wrongful Death Statute is unconstitutional would have the effect of enjoining the state court from enforcing the $7,000,000 wrongful death judgment entered against the Tillis Companies and from entertaining the subsequent state action brought by Moses and the co-administrators against Old Republic seeking partial satisfaction of that judgment from the policies of insurance.

Under *Younger v. Harris* and its progeny, federal district courts must refrain from enjoining pending state court proceedings except under special circumstances. *See Younger,* 401 U.S. at 53-54, 91 S.Ct. at 755. Under *Samuels v. Mackell,* 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971), the principles of *Younger* apply to declaratory judgments that would effectively enjoin state proceedings. Accordingly, the principles of *Younger* have direct application to this case.[3]

Although *Younger* itself only concerned state criminal proceedings, its principles have been extended to prohibit federal courts from enjoining state court civil proceedings where important state interests are involved:

> The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. The importance of the state interest

---

[2]The district court relied upon the *Rooker-Feldman* doctrine as an additional ground for dismissing Old Republic's declaratory judgment action, even though Old Republic ultimately was denied the opportunity to intervene in the state court wrongful death action. Because we hold that the district court did not abuse its discretion in relying on *Younger* abstention principles in dismissing the declaratory judgment action, and because those principles alone warrant affirmance of the district court's judgment, we need not decide whether the *Rooker-Feldman* doctrine has any bearing on this case.

[3]By contrast, the principles of *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 530 (5th Cir.1978), relied upon by Old Republic, are plainly inapplicable to this case. In *Johnson,* we reversed a district court's abstention order in a 42 U.S.C. § 1983 suit challenging the constitutionality of Georgia's attachment scheme, because the district court had erroneously held that the plaintiff was required to exhaust his state remedies before seeking relief in a federal forum. *Id.* at 529. In *Johnson,* no related state action was pending, and thus the principles of *Younger* raised no barrier to the plaintiff's lawsuit. Indeed, our *Johnson* opinion noted explicitly that the defendants did "not assert that the abstention by the district court can be justified under the principles of federalism and comity developed in *Younger* " and held that "*Younger* ... [does] not apply to this case." *Id.* at 530 n. 8.

4

may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature.... Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims.....

The question in this case is threefold: first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (citations and internal quotation marks omitted).

Applying the *Middlesex* factors to this case, it is readily apparent that the first factor is met. Clearly, there is an ongoing state judicial proceeding in this case that effectively would be enjoined if the federal court declared the Alabama Wrongful Death Statute to be unconstitutional: the state court enforcement action brought by Moses and the co-administrators. It is of no moment that the state court action was filed after Old Republic filed its federal declaratory judgment action. The Supreme Court has made it plain that the principles of *Younger* apply with equal force in the context of subsequently filed state court proceedings, so long as those "state court proceedings are initiated "before any proceedings of substance on the merits have taken place in federal court.' " *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) (quoting *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975)).

Skipping the second factor for the moment, it is also clear that Old Republic has an adequate opportunity to raise in state court any constitutional objections it has to the Alabama Wrongful Death Statute. Certainly, Alabama state procedural law does not "clearly bar the interposition of the constitutional claims." Indeed, the Alabama Supreme Court has already entertained several constitutional challenges to the Wrongful Death Statute. *See, e.g., Alabama Power Co. v. Turner,* 575 So.2d 551 (Ala.1991); *Central Alabama Elec. v. Tapley,* 546 So.2d 371 (Ala.1989). Those particular challenges were rejected, but Alabama law did not bar their interposition.

Old Republic contends that the Alabama Supreme Court's decisions in *Turner* and *Tapley* deprive it of an adequate opportunity to raise its constitutional challenges, because the Alabama

5

Supreme Court has already upheld the statute as constitutional. We disagree. The Supreme Court has never held that the practical obstacle created by adverse state supreme court precedent deprives a party of an adequate opportunity to raise the issue within the meaning of *Middlesex.* To the contrary, the Court has held that "the burden on this point rests on the federal plaintiff to show "that state *procedural* law barred presentation of [its] claims.' " *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987) (quoting *Moore v. Sims,* 442 U.S. 415, 432, 99 S.Ct. 2371, 2382, 60 L.Ed.2d 994 (1979)) (emphasis added). Old Republic can point to no feature of Alabama procedural law that prohibits it from attempting to persuade the Alabama Supreme Court to reexamine its decisions in *Turner* and *Tapley,* or from pressing constitutional arguments that those cases did not address. Accordingly, we cannot say that the pending state court enforcement action will not afford Old Republic an adequate opportunity to press its federal constitutional claims.

Our conclusion that Alabama precedent against Old Republic on the merits on one or more of its contentions should not excuse it from pursuing those contentions in state court is supported by analogy to Supreme Court decisions dealing with futility as it relates to procedural default doctrine in habeas corpus cases. Federal habeas law, like abstention law, is infused with notions of federalism and comity. With exceptions and qualifications not relevant here, procedural default doctrine generally bars a state prisoner from raising in a federal habeas proceeding issues which he failed to timely raise in state court, absent a showing of cause and prejudice. In *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), the Supreme Court reiterated the holding of an earlier decision, *Engle v. Isaac,* 456 U.S. 107, 130 & n. 36, 102 S.Ct. 1558, 1573 & n. 36, 71 L.Ed.2d 783 (1982), that the likelihood a particular federal constitutional claim will be rejected on the merits in the state courts does not excuse a habeas petitioner's failure to raise it there. In *Smith,* the Court applied that holding to the perceived futility of pressing a claim to the state supreme court, explaining that "it is the very prospect that a state court may decide, upon reflection, that the contention is valid that undergirds the established rule that perceived futility alone cannot constitute cause." *Id.* at 534-35, 106 S.Ct. at 2666 (citations and internal quotation marks omitted). Likewise,

6

the possibility that the Alabama Supreme Court may decide, upon reflection, that Old Republic's contentions are valid, undergirds our conclusion that perceived futility does not mean that Old Republic lacks an adequate opportunity to raise its contentions in the Alabama Supreme Court.[4]

Returning to the second *Middlesex* factor, the question is this: Does the pending enforcement action against Old Republic—to which the state is not a party—involve a sufficiently "important" state interest to justify invocation of the *Younger* doctrine? The Supreme Court has itself supplied the answer by applying *Younger* abstention in the context of a civil punitive damage award between private parties. In *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), Pennzoil obtained a judgment in a Texas state court against Texaco for nearly $11 Billion, including punitive damages of $3 Billion. Under Texas law, it appeared that Texaco could prevent enforcement of the judgment only if it posted a bond for more than $13 Billion, which it could not do. Facing that dilemma, Texaco brought a civil action in federal district court claiming that the Texas bond and lien provisions denied it due process. Texaco requested that the district court enjoin enforcement of the judgment pending the appeal of the judgment in the Texas courts. The district court entered an injunction, and the court of appeals affirmed. *See id.* at 6-8, 107 S.Ct. at 1524.

The Supreme Court reversed, holding that the federal district court should have abstained on *Younger* grounds. *See Pennzoil,* 481 U.S. at 17, 107 S.Ct. at 1529. The Supreme Court reasoned that "the States have important interests in administering certain aspects of their judicial systems" that can suffice to support invocation of *Younger* abstention, even in the context of civil proceedings involving purely private parties. *Id.* at 14, 107 S.Ct. at 1527. The Court elaborated on the importance of the state's interest as follows:

---

[4]Old Republic has not cited, nor has our research revealed, any reported federal appellate decisions holding that the absence-of-adequate-opportunity prong of *Middlesex* is satisfied by unfavorable state supreme court precedent addressing the constitutional issue in question. In *W.C.M. Window Co. v. Bernardi,* 730 F.2d 486, 490-92 (7th Cir.1984), the Seventh Circuit did speculate that unfavorable state court precedent might suffice in some circumstances, but avoided resolution of the question by deciding the case on alternative grounds. We are unpersuaded by that speculative dicta. At the time of *W.C.M. Window,* the Seventh Circuit did not have the benefit of the Supreme Court's *Pennzoil* or *Smith* opinions.

7

> Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained. So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand.

*Id.*

Under *Pennzoil,* it is readily apparent that pending enforcement action against Old Republic is sufficient to satisfy the second *Middlesex* factor. A federal declaratory judgment that the Alabama Wrongful Death Statute is unconstitutional would not only interfere with partial satisfaction of the wrongful death judgment against the Tillis Companies by means of an enforcement action against Old Republic, it "would do so on grounds that challenge the very process by which [that] judgment[ ][was] obtained."

As the district court correctly observed, *Younger* abstention is rooted in notions of comity. *See, e.g., Pennzoil,* 481 U.S. at 10-11, 107 S.Ct. at 1525-26. In order to award Old Republic the declaratory relief it seeks, a federal court would have to determine that Alabama's procedures for awarding damages under its wrongful death statute are so woefully inadequate that its own state courts are incapable of preventing unconstitutional damage awards in wrongful death cases. The federal court would have to find that Alabama state courts are incapable of enforcing the federal constitution in this context. Merely stating that proposition is sufficient to illuminate why the *Younger* doctrine stands in the way of the relief sought by Old Republic.

Principles of comity notwithstanding, Old Republic contends that exceptional circumstances in Alabama required the district court to entertain its declaratory judgment action. Specifically, Old Republic contends that it cannot obtain a fair resolution of its constitutional claims in state court due to "the inherent bias of an entire court system which routinely enters and affirms enormous punitive awards against out-of-state defendants and, in particular, out-of-state insurance companies." In constructing that argument, Old Republic makes much of newspaper and magazine articles, which "tell a bleak story of jury excesses," as well the fact that the United States Supreme Court has recently held some Alabama punitive damage judgments to be unconstitutionally excessive.

8

According to Old Republic, the Supreme Court's opinion in *BMW of North America, Inc. v. Gore,* --- U.S. ----, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), illustrates the constitutional deficiencies of Alabama's system.

We are aware of the Supreme Court's decision in *BMW,* but it did not hold that Alabama's punitive damages laws are unconstitutional; instead, it held that they had been unconstitutionally applied. *See* --- U.S. at ---- - ----, 116 S.Ct. at 1598-99. There is a world of difference between holding that Alabama courts have erred by failing to reduce or overturn unconstitutionally excessive damage awards in one or more cases and in holding that the entire state punitive damages scheme is *incapable* of constitutional application. Accordingly, *BMW* does not change the *Younger* abstention analysis applicable to this case.

Although on some occasions Alabama's punitive damages laws have been applied unconstitutionally, Old Republic has not shown that the Alabama Wrongful Death Statute is "flagrantly and patently violative of express constitutional prohibitions," or that the Alabama courts are applying the statute in bad faith, or that other "extraordinary circumstances" are present, as would be necessary to make an exception to the *Younger* rule. *See Younger,* 401 U.S. at 53-54, 91 S.Ct. at 755 (citation and internal quotation marks omitted). Since *BMW,* the Alabama Supreme Court has shown itself able and willing to follow the Supreme Court's guidelines for ensuring that Alabama punitive damage awards satisfy constitutional constraints. *See, e.g., American Pioneer Life Ins. Co. v. Williamson,* No. 1921796, --- So.2d ----, ---- (Ala. Sept. 5, 1997) (on remand from the Supreme Court) (conditioning affirmance on remittitur of $2,000,000 punitive damage award to $750,000); *Ford Motor Co. v. Sperau,* No. 1931591, --- So.2d ----, ---- (Ala. Sept. 5, 1997) (on remand from the Supreme Court) (conditioning affirmance on remittitur of $6,000,000 punitive damage award to $1,792,000); *Life Ins. Co. of Georgia v. Johnson,* No. 1940357, --- So.2d ----, ---- (Ala. Aug. 15, 1997) (on remand from the Supreme Court) (conditioning affirmance on remittitur of $15,000,000 punitive damage award to $3,000,000); *Union Sec. Life Ins. Co. v. Crocker,* No. 1931672, --- So.2d ----, ---- (Ala. Aug. 15, 1997) (on remand from the Supreme Court) (conditioning

9

affirmance on remittitur of $2,000,000 punitive damage award to $1,000,000); *Hillcrest Ctr., Inc. v. Rone,* No. 1940535, --- So.2d ----, ---- (Ala. Aug. 1, 1997) (affirming trial court's remittitur of punitive damage award from $200,000 to $130,000); *BMW of North America, Inc. v. Gore,* No. 1920324, --- So.2d ----, ---- (Ala. May 9, 1997) (on remand from the Supreme Court) (conditioning affirmance on remittitur of $2,000,000 punitive damage award to $50,000); *Foremost Ins. Co. v. Parham,* 693 So.2d 409, 413, 435 (Ala.1997) (conditioning affirmance on remittitur of two separate $7,500,000 punitive damage awards to $175,000 and $173,000). Indications are that the *BMW* decision has ushered in a new era for punitive damages in Alabama.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in dismissing Old Republic's declaratory judgment action. The district court's judgment of dismissal without prejudice is AFFIRMED.