United States Court of Appeals,

Eleventh Circuit.

No. 95-8084.

David Keith POGUE;  Denise Pogue, Plaintiffs-Appellants,

v.

OGLETHORPE POWER CORP.;  Rome Employment Services, Inc.,
Defendants-Appellees.

May 9, 1996.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 4:93-00258-CV-HLM), Harold L. Murphy,
Judge.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior
Circuit Judge.

CARNES, Circuit Judge:

David and Denise Pogue brought this negligence action against

Oglethorpe Power Corporation ("Oglethorpe") and Rome Employment

Services, Inc. ("RES") after David Pogue was seriously injured

while working on a construction site.  The district court granted

summary judgment in favor of the defendants, and the Pogues appeal.

This diversity case presents the question of whether a Georgia

"premise owner" is entitled to the statutory tort immunity provided

by O.C.G.A. § 34-9-11 if the premise owner has purchased a

"wrap-up" insurance policy to provide workers' compensation

insurance coverage for all on-site contractors and subcontractors.

Because no Georgia appellate court decisions provide clear,

controlling guidance to resolve the question, we certify it to the

Georgia Supreme Court.

## I. BACKGROUND FACTS AND PROCEDURAL POSTURE

At the time of Pogue's injury, Oglethorpe was the majority

owner of a construction project, known as the "Rocky Mountain Project" in Floyd County, Georgia. The purpose of the project was to construct a pump storage facility in which water could be collected from a series of reservoirs and released through a hydroelectric power house to generate power at peak electrical usage hours.

The principal contractor on the Rocky Mountain Project was Power Plant Constructors ("Power Plant"). At the time Oglethorpe contracted with Power Plant, Oglethorpe agreed to provide a "wrap-up" insurance policy to provide workers' compensation insurance coverage to all contractors and subcontractors on the construction site. Oglethorpe obtained such a policy from Argonaut Insurance Company, with Power Plant as the "named insured."

Oglethorpe's Corporate Safety and Loss Control Coordinator established a safety program for the Rocky Mountain Project, hiring four safety inspectors to represent Oglethorpe at the site. These safety inspectors were, technically, "leased" from RES, an employee leasing company that handled all administrative payroll and benefits functions for the safety staff in exchange for a fee paid by Oglethorpe. In all respects except for their payroll status, the four on-site safety inspectors functioned as Oglethorpe employees.

David Pogue began working for Power Plant in October 1991 as a cement finisher. When Pogue began working at the site, the powerhouse was about ten percent complete. The bottom level of what was to be a seventeen story concrete structure had been laid. As each concrete floor was poured, large openings were fabricated

in the floors to accommodate vents, wiring, and other structural components.  As a safety precaution, some, but not all, of the openings were covered with pieces of plywood or plywood reinforced with two-by-fours, or had temporary wooden railings placed around them.  Cement finishers, like Pogue, had no involvement in the placement of these safety precautions.

On June 5, 1992, Pogue was working with another concrete finisher in the powerhouse.  As was fairly typical throughout the powerhouse, there were several openings in the floor, some of which were covered and some of which were not.  As concrete finishers, Pogue and the other man were responsible for patching any holes or rough spots in the walls of the room in which they were working.  The work required the men to leave the room from time to time to replenish their supply of finishing concrete, which was mixed in another area.  The pathway leading into and out of the room crossed an opening that was covered with plywood.  Both men had, by necessity, walked on the plywood that covered this opening prior to Pogue's injury.

At the time of Pogue's injury, he was entering the room, having just replenished his supply of concrete.  As he stepped onto the plywood in his path, it suddenly and unexpectedly gave way under Pogue's weight.  Pogue fell forty-eight feet, sustaining serious and disabling injuries.  Pogue is currently receiving workers' compensation benefits pursuant to his employment with Power Plant.  The policy through which these benefits are being paid is the wrap-up policy purchased by Oglethorpe.

Pogue sued Oglethorpe and RES for negligent failure to provide

a safe place to work and negligent inspection. Pogue's wife sued for loss of consortium. The district court granted summary judgment to Oglethorpe on the basis that Oglethorpe was immune from liability as one who "provides workers' compensation benefits to an injured employee," pursuant to O.C.G.A. § 34-9-11. The district court also granted summary judgment to RES on the ground that the Pogues had presented no theory that would entitle them to recover from RES. On appeal, the Pogues have abandoned their claim against RES, and the only matter before this Court is the propriety of the grant of summary judgment in favor of Oglethorpe.

## II. ANALYSIS

The sole issue presented by this appeal is a question of law: Is a "premise owner" entitled to the statutory tort immunity provided by O.C.G.A. § 34-9-11 if the premise owner has purchased a "wrap-up" insurance policy to provide workers' compensation insurance coverage for all on-site contractors and subcontractors? The district court held that immunity applies in such a circumstance and granted summary judgment for Oglethorpe. We review the district court's grant of summary judgment, and its answer to questions of law, *de novo. E.g., Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 996 (11th Cir.1990) (review of summary judgment); *Swint v. City of Wadley,* 51 F.3d 988, 994 (11th Cir.1995) (review of questions of law).

In Georgia, tort immunity is provided by statute to an employer and certain other entities in exchange for liability for the provision of workers' compensation benefits. The Georgia Workers' Compensation Act provides, in relevant part:

> The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee ... provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer *or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee,* notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits....

O.C.G.A. § 34-9-11(a) (Supp.1995) (emphasis added).

Oglethorpe argues that, although it is not Pogue's employer, it is nonetheless entitled to tort immunity under O.C.G.A. § 34-9-11 as "one who provides workers' compensation benefits to an injured employee." Oglethorpe argues that it is entitled to this immunity under the plain language of the statute because it provided workers' compensation benefits to Pogue, albeit indirectly, by purchasing the wrap-up insurance policy from Argonaut Insurance Company that covered Pogue's employer, Power Plant.

Oglethorpe relies principally on *Fred S. James & Co. v. King,* 160 Ga.App. 697, 288 S.E.2d 52 (1981), to support its interpretation of the statute. In *Fred S. James,* an employee who was injured on the job sued the insurance broker that his self-insured employer had hired to administer its workers' compensation program. *Id.* The employee claimed that his injury resulted from a breach of the broker's contractual and common law duty to inspect and warn of unsafe workplace conditions and that, as a third-party tortfeasor, the broker was not immune from tort liability under the workers' compensation statute. *Id.* 288 S.E.2d at 52-53. The Georgia Court of Appeals rejected the employee's

argument.  It held that a broker or service agency that contracts with a self-insured employer to administer a workers' compensation program is the alter ego of the employer and is entitled to the same immunity as an insurer would be under the circumstances.  *Id.* at 53-54.  The court explained:

> We see no logical reason why a service agency which is responsible for the administration of a self-insured employer's workers' compensation program should not be included under the umbrella of immunity provided by the Act. By contract the service agency administers and facilitates the payment of benefits by the self-insurer, and anyone who "undertakes to perform or assist in the performance" of an employer's statutory duties under the Workers' Compensation Act should be immune from suit as a third party tortfeasor.

*Id.* at 54 (quoting *Allen v. Employers Serv. Corp.,* 243 So.2d 454, 455 (Fla.App.1971)).

Oglethorpe argues that, like the insurance broker in *Fred S. James,* it undertook to perform or assist in the performance of an employer's (Power Plant's) statutory workers' compensation duties by purchasing a policy of workers' compensation insurance to cover Power Plant's workers' compensation liability.  Therefore, reasons Oglethorpe, it is entitled to the statutory tort immunity that the Georgia Court of Appeals extended to the broker in *Fred S. James.*

The Pogues argue that *Fred S. James* is distinguishable because:  (1) unlike the employer in *Fred S. James,* Power Plant is not a self-insurer and (2) unlike the broker in *Fred S. James,* Oglethorpe is neither an insurer nor an administrative service company, but is merely a project owner that contractually assumed Power Plant's statutory duty to provide workers' compensation coverage to Power Plant employees.  The Pogues further argue that any remaining doubt on the issue is dispelled by a subsequent

Georgia Supreme Court case, *George v. Ashland-Warren, Inc.*, 254 Ga. 95, 326 S.E.2d 744 (1985).

In *Ashland-Warren,* an employee of the Georgia Department of Transportation ("DOT"), was working as a project engineer on a road construction project when he was struck and killed by a piece of earth-moving equipment. *Id.* 326 S.E.2d at 745. The equipment was owned and operated by Ashland-Warren, Inc., the general contractor on the project. *Id.* The deceased employee's widow recovered workers' compensation benefits from the DOT. Pursuant to an indemnification clause in the construction contract, the DOT was reimbursed by Ashland-Warren for these payments. *Id.* In addition to securing workers' compensation benefits from the DOT, the widow brought a wrongful death action against Ashland-Warren. Ashland-Warren defended on the basis that it was entitled to statutory workers' compensation immunity by virtue of its indemnification agreement with the DOT. *Id.* Ashland-Warren argued that, through the indemnification arrangement, it "provide[d] workers' compensation benefits to an injured employee" within the meaning of O.C.G.A. § 34-9-11. *Id.* at 745-46.

The Georgia Supreme Court rejected Ashland-Warren's argument, explaining the meaning and intent of the "provides workers' compensation benefits" provision of O.C.G.A. § 34-9-11, as follows:

> This provision was intended to provide tort immunity to workers' compensation insurers. The workers' compensation act generally is to be liberally construed in favor of the employee. Thus we reject the construction proffered by Ashland-Warren because it would operate in derogation of the plaintiff's common law right of action.
>
> Ashland-Warren does not come within the carefully worded terms of this exclusion. Ashland-Warren did not "provide workers' compensation benefits to an injured employee" or his

family; it reimbursed DOT for its outlay. Ashland-Warren's agreement was to indemnify and hold DOT harmless; it is not an insurance company and its agreement did not meet the requirements of a workers' compensation insurance policy. While such agreement would benefit the employer by providing reimbursement and would, according to Ashland-Warren, benefit the third party tortfeasor by providing tort immunity, it would not benefit the injured employee at all as a workers' compensation insurer would. Rather, it would in many instances take away the employee's cause of action against third-party tortfeasors which is so carefully reserved to the employee by OCGA § 34-9-11 itself. *The tort immunity created by OCGA § 34-9-11 protects the employer of the injured employee, employees of that employer, and the employer's workers' compensation insurer.* Ashland-Warren is not included.

*Id.* at 745-46 (emphasis added) (citations and footnote omitted). The court added, "[W]e reject the contention that a third-party tortfeasor may create tort immunity on its own behalf by agreeing to indemnify an employer for compensation benefits paid to its employee...." *Id.* at 746.

Pogue argues that this case falls within the rule of *Ashland-Warren* in that there is no substantive difference between a third-party tortfeasor attempting to create tort immunity on its own behalf by agreeing to indemnify an employer for workers' compensation benefits and a third-party tortfeasor attempting to create tort immunity on its own behalf by agreeing to pay the premiums on an employer's workers compensation insurance policy. Pogue argues that, under *Ashland-Warren,* Oglethorpe is not entitled to immunity under O.C.G.A. § 34-9-11 because Oglethorpe is neither "the employer of the injured employee," an "employee[ ] of that employer," nor "the employer's workers' compensation insurer." *See id.* at 746.

Additionally, Pogue points to *Yoho v. Ringier of America, Inc.,* 263 Ga. 338, 434 S.E.2d 57 (1993), in which the Georgia

Supreme Court stated:

> Only an entity who is secondarily liable for workers'
> compensation benefits ... is consequently entitled to tort
> immunity under OCGA § 34-9-11.... [I]t is only a "contractor"
> who is secondarily liable for workers' compensation benefits
> and who is, therefore, entitled to tort immunity. An owner
> who is merely in possession or control of the premises would
> not be subject to workers' compensation liability as a
> statutory employer and would not be immune from tort
> liability.

*Id.* 434 S.E.2d at 59. Pogue argues that Oglethorpe, as an owner and not a contractor, would not be secondarily liable for the workers' compensation benefits of Power Plant employees. Therefore, Pogue reasons, Oglethorpe is not entitled to tort immunity under the rule of *Yoho.*

Oglethorpe responds to Pogue's arguments by arguing (1) that the *Ashland-Warren* court specifically declined to overrule *Fred S. James, see Ashland-Warren,* 326 S.E.2d at 746 n. 1, and (2) that *Yoho* was an "enterprise liability" decision that, despite its sweeping language, has no bearing on this case.

Determining whether this case falls within the rule of *Fred S. James* or within the rule of *Ashland-Warren* is problematic. Taken alone, the *Ashland-Warren* decision would appear to deny tort immunity to Oglethorpe, because Oglethorpe is not an "employer of the injured employee," an "employee[ ] of that employer," or "the employer's workers' compensation insurer." *See Ashland-Warren,* 326 S.E.2d at 746. However, the *Ashland-Warren* court expressly declined to overrule *Fred S. James, see id.* 326 S.E.2d at 746 n. 1, and under *Fred S. James* Oglethorpe might be entitled to tort immunity as one who " "undertakes to perform or assist in the performance' of an employer's statutory duties under the Workers'

Compensation Act," *Fred S. James,* 288 S.E.2d at 54 (quoting *Allen v. Employers Serv. Corp.,* 243 So.2d 454, 455 (Fla.App.1971)). Nor do we find a clear answer in the *Yoho* decision because, unlike *Yoho,* this is not an ordinary "enterprise liability" case. Unlike the defendant in *Yoho,* Oglethorpe is not "[a]n owner who is *merely* in possession or control of the premises," *see Yoho,* 434 S.E.2d at 59 (emphasis added). In contrast to *Yoho,* in this case there is a connection, albeit an indirect one, between the defendant and the payment of the plaintiff's workers' compensation benefits. In summary, the relevant appellate Georgia case law leaves us with substantial doubt about the proper resolution of the question presented by this case.

The presence or absence of statutory tort immunity under the facts of this case has significant public policy ramifications, and we are in doubt about the matter. When such doubt exists as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary state law guesses and to offer the state court the opportunity to interpret or change existing law. *Mosher v. Speedstar Div. of AMCA Int'l, Inc.,* 52 F.3d 913, 916-17 (11th Cir.1995). "Only through certification can federal courts get definitive answers to unsettled state law questions. Only a state supreme court can provide what we can be assured are "correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law." *Sultenfuss v. Snow,* 35 F.3d 1494, 1504 (11th Cir.1994) (en banc) (Carnes, J., dissenting), *cert. denied,* --- U.S. ----, 115 S.Ct. 1254, 131 L.Ed.2d 134 (1995).

While we could make an *Erie*[1] guess as to the applicability of tort immunity under O.C.G.A. § 34-9-11 to this case, the more prudent course of action is to submit the issue to the Georgia Supreme Court. Accordingly, we respectfully submit certify the following question of law to the Supreme Court of Georgia:

> Is a "premise owner" entitled to the statutory tort immunity provided by O.C.G.A. § 34-9-11 if the premise owner has purchased a "wrap-up" insurance policy to provide workers' compensation insurance coverage for all on-site contractors and subcontractors?

Our statement of the question is not meant to limit the scope of inquiry by the Supreme Court of Georgia. On the contrary:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis.... This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given....

*Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968). The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

QUESTION CERTIFIED.

### III. CONCLUSION

We AFFIRM the district court's grant of summary judgment in favor of Rome Employment Services, Inc. With respect to Oglethorpe Power Corp, we CERTIFY the state law question of whether the tort immunity provided by O.C.G.A. § 34-9-11 applies to the circumstances of this case, and we WITHHOLD any decision about the district court's grant of summary judgment in favor of Oglethorpe until we receive the answer to that certification.

---

[1] *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).