[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 27, 2001
THOMAS K. KAHN
CLERK

-----------------------------------------
No. 00-14137
-----------------------------------------
D. C. Docket No. 00-00976 CV-D-N


ROBERT BUTLER,
W. THOMAS GAITHER, et al.,

                                        Plaintiffs-Appellees,

      versus

THE ALABAMA JUDICIAL INQUIRY COMMISSION,
RANDALL L. COLE, in his official capacity, et al.,

                                        Defendants-Appellants.


-------------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
-------------------------------------------------------------------
**(March 27, 2001)**


Before EDMONDSON, HILL and GIBSON*, Circuit Judges.
_____

*      Honorable John R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by
       designation.

EDMONDSON, Circuit Judge:

The Constitution of the United States of America is the supreme law of this country. Both state courts and federal courts have the authority and the duty to enforce the federal Constitution. This case is one in which the federal courts were invited to become involved in a controversy that was already before a state court and also invited to stop the state court proceeding. So, questions of federalism and abstention are presented.

Justice Harold See, an Associate Justice of the Alabama Supreme Court, attacks a state judicial canon adopted and approved by the state supreme court. He has asked a federal court to declare the canon invalid under the federal Constitution.[1] Because great concerns of comity and federalism tower over this case, we must proceed cautiously. As federal judges, we will interfere with the state proceeding only if it is clear to us that the state forum is inadequate to hear Justice See's challenges based on the United States Constitution. Because we, at this time, are uncertain about the adequacy of the state forum, we are glad to ask the Supreme Court of Alabama to explain some Alabama law to us. See Lehman Bros. v. Schein, 94 S. Ct. 1741, 1745 (1974) (Rehnquist, J., concurring)

---

[1] Two other Plaintiffs, W. Thomas Gaither, a former Alabama district and circuit judge, and Ronald Butler, a citizen and voter, also are parties to this suit. The district judge, however, failed to rule on the issue of standing for these two Plaintiffs. Accordingly, we will not consider their status in this appeal.

(suggesting certification appropriate in "unusual circumstances [that] require a federal court having jurisdiction of an action to nonetheless abstain from deciding doubtful questions of state law").

I.

The state of Alabama has developed a comprehensive system to regulate its elected judicial officials.

The Alabama Constitution charges the state's highest court with the responsibility of developing and implementing the ethical rules that govern state judges. Ala. Const. of 1901, amend. 328, §6.08(c). On 1 January 1998, the Alabama Supreme Court adopted Canon 7(B)(2). Canon 7(B)(2) restricts candidates' behavior in judicial elections by prohibiting publication of false information and information that is true but "would be deceiving or misleading to a reasonable person." The Supreme Court approved the rule by an eight to one vote; only Justice See voted against the rule.

The Alabama Constitution vests enforcement of the state's Canons of

Judicial Ethics in the Judicial Inquiry Committee ("JIC").[2]  If a majority of the JIC

determines that a reasonable basis for an ethics violation exists, the JIC may file a

complaint with the Court of the Judiciary.[3]  Ala. Const. of 1901, amend. 581,

§6.17(b).  Once a complaint is filed, a charged judge is temporarily disqualified

from judging until the Court of the Judiciary rules on the complaint; in the

meantime, the pertinent judge draws his pay.  Ala. Const. of 1901, amend. 328,

§6.19 ("A judge shall be disqualified from acting as a judge, without loss of salary,

while there is pending . . . (2) a complaint against him filed by the judicial inquiry

commission with the court of the judiciary.").

As we understand Alabama law, the Court of the Judiciary is a court of

limited jurisdiction that operates much like other state trial courts.  The court has

authority to hear complaints filed by the JIC and may discipline a judge for

---

[2]Under the Alabama Constitution, the JIC consists of one appellate judge appointed by the
Supreme Court, two circuit court judges appointed by the Circuit Judges' Association, three non-
lawyers appointed by the Governor and confirmed by the Senate, one district judge appointed by
the Lieutenant Governor and confirmed by the Senate, and two members of the state bar
appointed by the governing body of the Alabama State Bar.  Ala. Const. of 1901, amend. 581,
§6.17(a).

[3]Under the Alabama Constitution, the Court of the Judiciary  consists of one appellate judge
appointed by the Supreme Court who serves as Chief Judge, two circuit court judges selected by
the Circuit Judges' Association, two non-lawyers appointed by the Governor and confirmed by
the Senate, one non-lawyer appointed by the Lieutenant Governor and confirmed by the Senate,
one district judge selected by the District Judges' Association, and two members of the state bar
selected by the governing body of the Alabama State Bar.  Ala. Const. of 1901, amend. 581,
§6.18(a).

violating a Canon of Judicial Ethics.[4]  Pursuant to its power under the Alabama

Constitution, the Supreme Court has adopted the rules governing the Court of the

Judiciary.  <u>See</u> Ala. Const. of 1901, amend. 581, §6.18(c). The general rules of

civil procedure and evidence apply, unless otherwise provided.  Ala. Ct. of the Jud.

R. of Proc. 10.  Appeal from the Court of the Judiciary is directly to the state

supreme court.  Ala. Const. of 1910, amend. 581, §6.18(b).

During his campaign for Chief Justice of the Alabama Supreme Court,

Justice See made comments about another candidate's record.  The comments are

alleged to have violated Canon 7(B)(2) and Canon 2(A).  A majority of the JIC

agreed that a reasonable basis existed to charge Justice See with violating the

judicial code.  The JIC filed a 3-count complaint against Justice See in the Court of

the Judiciary.  Pursuant to the Alabama Constitution, Justice See was immediately

disqualified from judicial work until the court decided his case.

Justice See made no response to the complaint filed against him with the

Court of the Judiciary.  Instead, Justice See, three days later, filed a complaint

against the JIC in the United States District Court in the Middle District of

Alabama.  He alleged that the pertinent state judicial canons (both facially and as

---

[4]The discipline may include removal from office, suspension without pay, or censure.  Ala. Const. of 1901, amend. 581, §6.18(a).

5

applied) violated the First and Fourteenth Amendments of the United States Constitution. He also sought a temporary restraining order and preliminary injunction preventing the enforcement of the canons against him and returning him to an active position on the state supreme court. The JIC countered with a motion to dismiss based on abstention principles. The district court granted the TRO and preliminary injunction and denied the motion to dismiss. The federal court order enjoined the JIC from enforcing Canon 7(B)(2) and from prosecuting the complaint against Justice See. The district court also prevented the JIC from interfering with Justice See's work on the state supreme court.

II.

The district court's injunction of the ongoing state ethical proceedings raises questions under <u>Younger v. Harris</u>, 91 S. Ct. 746 (1971). <u>Younger</u> and its progeny reflect the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases -- already pending in state court -- free from federal court interference. 91 S. Ct. at 750. In general, the law on this point is clearly established. <u>See</u>, <u>e.g.</u>, <u>Quackenbush v. Allstate Ins. Co.</u>, 116 S. Ct. 1712, 1724 (1996); <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 106

6

S. Ct. 2718, 2722 (1986); Old Republic Union Ins. Ct. v. Tills Trucking Co., Inc.,

124 F.3d 1258, 1263 (11th Cir. 1997).  As the Court recognized in Younger, "the

normal thing to do when federal courts are asked to enjoin pending proceedings in

state courts is not to issue such injunctions."  Id. at 751.

The Supreme Court also has addressed already the Younger doctrine in the

context of state disciplinary proceedings, saying that "[t]he importance of the state

interest in the pending state judicial proceedings and in the federal case calls

Younger abstention into play."  Middlesex County Ethics Comm. v. Garden State

Bar Assoc., 102 S. Ct. 2515, 2522-23 (1982).  Middlesex sets out three

benchmarks to guide the application of abstention: "*first*, do state bar disciplinary

hearings within the constitutionally prescribed jurisdiction of the State Supreme

Court constitute an ongoing state judicial proceeding; *second*, do the proceedings

implicate important state interests; and *third*, is there an adequate opportunity in

the state proceedings to raise constitutional challenges."  Id. at 2521 (emphasis in

original).

The district court concluded, and the parties do not dispute, that the first two

elements are satisfied here.  The parties disagree, however, about whether the state

proceedings in the Court of the Judiciary provide an adequate opportunity for

Justice See to raise his federal constitutional challenges.  If the state forum is an

7

adequate one in which Justice See may raise his constitutional challenge, then federal courts must abstain.

Justice See bears the burden to establish that the state procedures are inadequate. Pennzoil Co. v. Texaco, Inc., 107 S. Ct. 1519, 1528 (1987). "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." Middlesex County, 102 S. Ct. at 2521 (emphasis in original). See also Texaco, 107 S. Ct. at 1528 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").

As the Supreme Court has advised, the "pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims. . . ." Middlesex County, 102 S. Ct. at 2521, quoting Moore v. Sims, 99 S. Ct. 2371, 2380 (1979). In the present case, the district court concluded that no adequate state forum existed in which Justice See might raise his constitutional challenges. The district court also questioned the ability of the Alabama judicial system to consider objectively the merits of this dispute.[5]

---

[5]The district court opined that a lower state court like the Court of the Judiciary would probably not strike down an ethics canon recently adopted by the state supreme court, that the four members of the state supreme court who approved the ethics rule would be unable to evaluate objectively the constitutional implications of that rule, and that all supreme court judges

8

Middlesex County provides a useful analogy to this case. In that case, a lawyer was charged with violating New Jersey ethics rules. The New Jersey ethics system operated much like the Alabama system: the state supreme court adopted the ethics rules; the ethics committee, composed of attorneys and non-attorneys, reviewed complaints, made a recommendation, and referred the case to a disciplinary review board for a decision; and review of the board's decision was to the New Jersey Supreme Court.

The Middlesex lawyer made no response to the state proceedings. Instead, the lawyer filed an action in federal court challenging the disciplinary rules as violative of the First Amendment. The district court dismissed based on Younger, and the Supreme Court affirmed. In concluding that adequate opportunity existed for the plaintiff to raise his challenges in the New Jersey court system, the Supreme Court noted the "unique relationship" shared between the state supreme court and the ethics committee. Id. at 2523. Unlike the case here, however, the Supreme Court in Middlesex also had actual evidence that an adequate forum existed: before the Supreme Court's decision, the New Jersey Supreme Court had sua sponte considered and resolved the constitutional issue raised by the ethics charge.

would presumably be recused from hearing See's challenge. We accept none of these observations as a basis to decline to abstain.

9

Like the plaintiff in Middlesex, Justice See failed to respond to the complaint filed by the JIC and failed even to attempt to raise a federal constitutional challenge in the state proceedings.  See Middlesex County, 102 S. Ct. at 2523.  Also, Justice See points to nothing that now convinces us that the Court of the Judiciary could not have considered constitutional challenges to the rules they were charged with enforcing.  As in Middlesex, the unique relationship between the Alabama Supreme Court and the Court of the Judiciary leads us to believe that an adequate state forum might exist to consider Justice See's constitutional claims.

Justice See argues that because the Court of the Judiciary is a court of limited jurisdiction, it cannot adjudicate federal constitutional issues.  He relies on a line of Alabama cases that say probate courts, as courts of limited jurisdiction, cannot consider constitutional issues.  See Docena Fire Dist. v. Rucker, 564 So. 2d 422, 424 (Ala. 1990).  Perhaps the reasoning of these cases may be extended to prevent the Court of the Judiciary from considering constitutional issues.  To define the Court of the Judiciary's power in this way, however, would be not to follow existing Alabama law, but to extend the existing Alabama case law; an extension that we are slow to make without seeking guidance from Alabama.  And we observe that the Alabama Supreme Court has signaled that parties may possibly

be able to raise constitutional issues in the Court of the Judiciary. See Boggan v. Judicial Inquiry Comm'n, 759 So. 2d 550, 552 (Ala. 1999) (concluding that judge waived state constitutional challenges by not raising them at Court of the Judiciary, but then considering merits of constitutional challenge).

And even if the Court of the Judiciary itself cannot decide federal constitutional questions, maybe the procedural law governing the Court of the Judiciary will allow litigants the opportunity to seek, in the state supreme court, interlocutory review from certain orders.[6] See generally Ohio Civil Rights Comm'n, 106 S. Ct. at 2724 ("It is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding."). Because the Alabama Rules of Civil Procedure seem to apply to Court of the Judiciary proceedings, perhaps Justice See could have moved to dismiss the case in the Court of the Judiciary based on his constitutional objections to the charges. See Ala. R.

---

[6]We recognize that resolving Justice See's constitutional challenges speedily is an important consideration in this case. See Gibson v. Berryhill, 93 S. Ct. 1689, 1697 (1973) (Younger abstention "presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved"). And while we will not establish a particular time in which the challenges must be resolved, we observe that the availability of an interlocutory appeal, as opposed to an appeal after final judgment in the Court of the Judiciary, might be important in assessing the adequacy of state remedies.

We also note that by seeking relief in federal court, instead of litigating in the state court, Justice See has delayed resolution of his state case. While we are unaware of the promptness with which Alabama would have been able to resolve Justice See's constitutional challenges in the state proceeding, we observe that claims and appeals in the federal system unfortunately can also take a long time to resolve. Coming to federal court may not be the quickest procedure to resolve federal constitutional questions about state law.

11

Civ. Proc. 12 & Ala. R. Civ. Proc. 56.  Interlocutory review might be available; so even if the Court of Judiciary denied the motion or refused to consider the constitutional challenges, the Alabama Supreme Court might be able to address the challenges through interlocutory appeal.  Ala. R. App. Proc. 5(a); see also Ala. R. App. Proc. 21(a) (mandamus review).  Either the Court of the Judiciary or the Alabama Supreme Court may possibly also be able to issue a stay of Justice See's disqualification pending appeal.  See Ala. R. Civ. Proc. 62; Ala. R. App. Proc. 8. These thoughts are just some ways in which Justice See perhaps could have raised his constitutional challenges in the already commenced state proceeding.  At this point, we are speculating some.  Without definitive Alabama law on this issue, we cannot be sure.

That certain members of the Alabama Supreme Court once approved the judicial canons now in dispute means little to us. We feel confident that a state supreme court can adequately consider the merits of federal constitutional challenges to the judicial canons that the state supreme court passed.  See, e.g., Middlesex County, 102 S. Ct. at 2523 (recognizing that New Jersey Supreme Court properly considered constitutionality of ethics rule approved by state supreme court); In re Chmura, 608 N.W. 2d 31 (Mich. 2000) (state supreme court reviewing constitutionality of judicial canon passed by state supreme court five years earlier).

12

And if certain individual justices decide that they cannot objectively consider the constitutionality of the judicial canons or should, for some other reason, not participate in the decision of Justice See's challenges, Alabama law permits justices to recuse themselves in such situations. See Ala. Canons of Jud. Ethics, Canon 3C. We stress that a previous decision or act by a state supreme court on a certain issue does not necessarily make an otherwise adequate forum inadequate. See Tills Trucking Co., 124 F.3d at 1263 (concluding that adverse state supreme court decision does not deprive party of adequate opportunity to raise constitutional challenge).

If the procedural laws governing the Court of the Judiciary permit a reasonably speedy review of federal constitutional issues, either before the Court of Judiciary itself or through review by a higher state court, then the federal court must defer to the state process.[7]

III.

Justice See contends that even where state remedies are available, federal

---

[7]Even if we decide to abstain and to allow Alabama courts to adjudicate Justice See's constitutional claims, ultimate review still rests with the United States Supreme Court, which has the final word on the United States Constitution. The United States Supreme Court can hear an appeal from either the Alabama Supreme Court or from this court.

intervention is warranted when the plaintiff makes a showing of irreparable injury. Irreparable injury exists if the challenged provision is "flagrantly and patently violative of express constitutional prohibitions" or if "unusual circumstances [exist] that would call for equitable relief." Younger, 91 S. Ct. at 755.

The post of Justice of the Supreme Court of Alabama is not merely a job to which some person might have a right as personal property. Under the law, it is a state office provided by the people of Alabama, provided not for the benefit of the officeholder, but as a public necessity and a means of public service for those persons fortunate enough to be entrusted temporarily with it. Most important, the duties of that office are defined by Alabama law. Justice See, having been charged by a majority of the JIC with an ethics violation during campaigning, has been temporarily disqualified from working at his elected position pending the outcome of the investigation.[8] A temporary disqualification seems to be demanded by the words of the state constitution, a constitution which Alabama judges -- including Justice See, as an officer of the court -- have sworn to uphold. And even though Justice See might be currently unable to serve through work, the people of Alabama who elected Justice See have collectively spoken through their constitution, which seems to require disqualification in this situation. In the light

---

[8] Justice See, pursuant to the district court's order, is actually working.

14

of the state's law, his legal duty now as a state judge might well be not to work, but to step back and to wait while the state's processes act on his case. Based on these legal facts, we do not think that Justice See nor the citizens of Alabama are suffering irreparable injury sufficient to justify immediate intervention by the federal courts.

Also, while we today make no decision about the constitutionality of Alabama's judicial canons, we doubt that Canon 7(B)(2) patently or fragrantly violates the Constitution "in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 91 S. Ct. at 755. We recognize the importance of protecting political speech, but as the Supreme Court has noted, "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." Younger, 91 S. Ct. at 754. Given the preexisting state proceeding, any federal constitutional problems that Alabama's judicial canons present should be addressed and resolved by the Alabama court system if that system can do it.

IV.

15

Because we can properly intervene in a state judicial proceeding only when we are convinced that the state forum is inadequate and because we are, for now, uncertain about the adequacy of the state forum for Justice See's federal constitutional challenges, we certify to the Alabama Supreme Court these controlling questions for review:

A.   **IN A PROCEEDING BEFORE THE ALABAMA COURT OF THE JUDICIARY, CAN A DEFENDANT RAISE AND HAVE DECIDED A CONSTITUTIONAL CHALLENGE TO A JUDICIAL CANON, EITHER AT THE COURT OF THE JUDICIARY OR THROUGH DIRECT REVIEW TO THE SUPREME COURT OR BY OTHER MEANS?**

B.   **IF SO, HOW DO THE PROCEDURAL RULES GOVERNING THE COURT OF THE JUDICIARY PERMIT A REASONABLY SPEEDY DECISION ON FEDERAL CONSTITUTIONAL ISSUES?**

C.   **IN A PROCEEDING BEFORE THE ALABAMA COURT OF THE JUDICIARY, CAN THAT COURT OR A HIGHER COURT GRANT,**

16

**IN THAT PROCEEDING, A STAY OF THE JUDGE'S DISQUALIFICATION PENDING THE OUTCOME OF THAT PROCEEDING OR THE OUTCOME OF THE FEDERAL CONSTITUTIONAL CHALLENGE POSED IN THAT PROCEEDING?**

Our phrasing of these certified questions is meant to restrict, in no way, the Alabama Supreme Court's response to the questions or its analysis of the state law problems posed by this case. See City of Marietta v. CSX Transp., Inc., 196 F.3d 1300, 1309 (11th Cir. 1999); Edmonds v. Bronner 864 F.2d 752, 753-54 (11th Cir. 1989). We seek clarification, in the light of what we have written today, of the applicable state law; and the questions are a guide. The more information that the state supreme court can provide to us, the better we will be able to resolve the abstention problem and possibly the merits. To assist the Alabama Supreme Court in its consideration of this case, the briefs of the parties and amici curiae will accompany this certification.

We hope that the Alabama Supreme Court -- if it chooses to answer -- will be able to answer our questions expeditiously. See generally Lehman Bros, 94 S. Ct. at 1744. We retain jurisdiction over the case while the Alabama Supreme Court considers the certified question; so we can rule on the abstention issue, and

possibly the merits, if we get no help from the Alabama Supreme Court within a suitable time. But we would greatly prefer to hear from the state's highest court on this unsettled and important area of state law. And if the law will allow it, we will gladly let Alabama courts resolve this important question about Alabama law and the United States Constitution: "the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."[9] Younger, 91 S. Ct. at 750.

CERTIFIED QUESTIONS.

---

[9] We observe that because the Alabama Supreme Court adopted the judicial canons at issue here, the court may also be able to remedy federal constitutional defects, if any, that it may find in the judicial canons challenged by Justice See. Our certification to the Alabama Supreme Court does not preclude this activity. See Pogue v. Oglethorpe Power Corp., 82 F.3d 1012, 1017 (11th Cir. 1996) (certification "offer[s] the state court the opportunity to interpret or change existing law.").